## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

| | |
|---|---|
| **RICKY WILLIAMS, on behalf of himself and all others similarly situated,** | **CASE NO.:** |
| **Plaintiff,** | **CLASS ACTION** |
| **v.** | **COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY AND INJUNCTIVE RELIEF** |
| **GULF COAST PAIN CONSULTANTS, LLC D/B/A CLEARWAY PAIN SOLUTIONS INSTITUTE,** | **DEMAND FOR JURY TRIAL** |
| **Defendant.** | |

Plaintiff Ricky Williams ("Plaintiff"), individually and on behalf of those similarly situated, brings this class action lawsuit against Gulf Coast Pain Consultants, LLC d/b/a Clearway Pain Solutions Institute ("Clearway" or "Defendant") based upon personal knowledge as to himself, and on information and belief as to all other matters.

### INTRODUCTION

1.     Plaintiff brings this class action against Clearway for its failure to properly secure and safeguard protected health information as defined by the Health Insurance Portability and Accountability Act ("HIPAA"), medical information, and other personally identifiable information (collectively, "PII"), and for failing to

provide timely, accurate, and adequate notice to Plaintiff and other Class Members (defined below) that the integrity of their PII had been compromised.

2. On or about April 4, 2019, Defendant notified approximately 35,000 of its patients and former patients (collectively, "Patients") that its electronic medical record ("EMR") system had been accessed by an unauthorized third party and exposed sensitive Patient PII including, but not limited to, names, addresses, telephone numbers, email addresses, social security numbers, dates of birth, insurance information, referring providers, and other demographics ("Data Breach").

3. Despite the breadth and sensitivity of the PII that was exposed, and the attendant consequences to Patients as a result of the exposure, Clearway failed to disclose the Data Breach for at least seven weeks from the time it was first discovered, further exacerbating harm to its Patients. Moreover, to date, Clearway has neither disclosed when unauthorized third parties first breached its EMR system, nor for how long Patient PII has been in the possession of criminals.

4. This Data Breach was a direct result of Defendant's failure to implement adequate and reasonable cybersecurity procedures and protocols necessary to protect Patient PII.

5. Defendant disregarded the rights of Plaintiff and Class Members by: intentionally, willfully, recklessly, or negligently failing to take adequate and

reasonable measures to ensure its data systems were protected against unauthorized intrusions; failing to disclose that it did not have adequately robust computer systems and security practices to safeguard Patient PII; failing to take standard and reasonably available steps to prevent the Data Breach; failing to monitor and timely detect the Data Breach; and failing to provide Plaintiff and Class Members prompt and accurate notice of the Data Breach.

6.    As a result of Defendant's failure to implement and follow basic security procedures, Patient PII is now in the hands of thieves.  Plaintiff and Class Members have had to spend, and will continue to spend, significant amounts of time and money in an effort to protect themselves from the adverse ramifications of the Data Breach and will forever be at a heightened risk of identity theft and fraud.

7.    Plaintiff, on behalf of all others similarly situated, alleges claims for negligence, invasion of privacy, breach of implied contract, unjust enrichment, breach of fiduciary duty, breach of confidence, and seeks to compel Defendant to fully and accurately disclose the nature of the information that has been compromised and to adopt reasonably sufficient security practices to safeguard Patient PII that remains in their custody in order to prevent incidents like the Data Breach from reoccurring in the future.

## PARTIES

8.    Plaintiff Ricky Williams is a resident of Andalusia, Alabama and a Clearway patient. Over the past nine months, Mr. Williams received treatment on three separate occasions at three different Clearway clinics, including the clinic located in Pace, Florida in September or October 2018, the clinic located in Pensacola, Florida in January 2019, and the clinic located in Andalusia, Alabama in February or March 2019. On or about April 4, 2019, Mr. Williams, along with 35,000 other Clearway Patients, received notice from Defendant that his sensitive PII had been improperly exposed to unauthorized third parties since at least February 20, 2019. As a result of the Data Breach, Mr. Williams has spent his valuable time addressing the consequences of the Data Breach including, but not limited to, the following: contacting credit reporting agencies, contacting the Internal Revenue Service, and obtaining, reviewing and monitoring his financial accounts and credit reports for fraudulent or suspicious activity. As a result of the Data Breach and Defendant's failure to prevent it, Mr. Williams will continue to be at heightened risk for medical fraud, financial fraud, and identity theft along with their attendant damages for years to come.

9.    Defendant Gulf Coast Pain Consultants, LLC (d/b/a Clearway Pain Solutions Institute) is a Florida Limited Lability Company with its principal place of business at 4901 Marketplace Road Pensacola, FL 32504. It provides

interventional and non-interventional pain management treatments, physical therapy, chiropractic services, laboratory testing, and medication management services. Founded in 2013, it has 11 locations across Florida and Alabama.[1]

## JURISDICTION AND VENUE

10.    This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), as the amount in controversy exceeds $5 million, exclusive of interest and costs. There are approximately 35,000 putative Class Members, at least some of whom have a different citizenship from Defendant.

11.    This Court has jurisdiction over Defendant, as it is headquartered and operates in this District. Plaintiff received Defendant's services within this District. Through its business operations in this District, Defendant intentionally avails itself of the markets within this District to render the exercise of jurisdiction by this Court just and proper.

12.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events and omissions giving rise to this action occurred in this District. Plaintiff received health services from Defendant in this

---

[1] https://clearwaypain.com/locations/

District. Clearway is based in this District, likely maintains Patient PII in the District, and has caused harm to Plaintiff and Class Members residing in this District.

## STATEMENT OF FACTS

### A. *The Data Breach*

13.    On April 4, 2019, Clearway's President, Deborah Origer, transmitted a letter to Plaintiff and Class Members stating that an unauthorized third party had gained access to Clearway's EMR system and highly sensitive Patient PII including, but not limited to, Patient names, addresses, telephone numbers, email addresses, social security numbers, dates of birth, chart numbers, insurance and primary care information. Clearway claimed it first discovered the Data Breach on February 20, 2019, but offered no other critical details, such as when the intrusion first occurred, or for how long criminals had unfettered access to Patient PII.

14.    Despite having been aware of the Data Breach since February 20, 2019, Clearway waited another seven weeks before notifying Patients that their PII had been exposed to unauthorized third parties. In a letter sent to Plaintiff and other affected Patients, Clearway stated in relevant part:

> At Gulf Coast Pain Consultants, LLC (now doing business as Clearway Pain Solutions Institute), we take the privacy of your personal health information very seriously. We are sending you this letter to let you know about an incident involving some of your information.

On February 20, 2019, we became aware that our electronic medical record ("EMR") system was accessed in an authorized manner by a third party. Immediately upon becoming aware of this issue, we terminated the third party's access to our EMR system. We notified law enforcement and have been cooperating in their investigation into the inappropriate access. We also generated and reviewed logs to determine what information in our EMR system may have been accessible by the third party. Our investigation revealed that the third party accessed patient information that included your name, address, telephone number, email address, social security number, date of birth, chart numbers, and potentially insurance or primary care information. The third party did not have access to any of your credit cards or financial account information.

We are taking the steps to avoid any future similar incidents. In addition to investigating this matter thoroughly and terminating the unauthorized access to our EMR system, we have reviewed all user accounts and validated the access levels and activity for each account. We are also reviewing our policies and procedures and will provide re-training to employees as needed. As an additional precaution, to reduce the risk of fraud or identity theft, we are offering you a one-year membership in Experian's® IdentityWorks at no cost to you. This product provides you with superior identity protection and resolution of identity theft. We have provided you with the enrollment instructions in the attached Security Reference Guide.

We recommend that you remain vigilant to prevent identity theft and fraud by monitoring your credit reports and financial institution and other account statements. We also advise that you promptly report any suspicious activity or suspected identity theft to law enforcement or your state's attorney general. In addition, under the Federal Fair Credit Reporting Act, you have the right as a consumer to place fraud alerts on credit reports to alert potential creditors or lenders of potential fraudulent activity related to the use of your personal information. You may do so by contacting credit reporting agencies.

The enclosed Security Reference Guide outlines other steps you should consider to lessen the risk of identity theft and provides contact information for the three major credit reporting agencies and the toll-free number, website and address for the Federal Trade Commission ("FTC").

We deeply regret this situation and any inconvenience this may cause you. If you have any questions or concerns regarding this letter, please call toll-free (844) 439-7669.[2]

**B. _The Value of Personally Identifiable Information_**

15.     The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[3] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person."[4] The FTC acknowledges that identity theft victims must spend countless hours and large amounts of money repairing the impact to their good name and credit record.[5]

16.     PII is such a valuable commodity that once the information has been compromised, criminals often trade the information on the "cyber black-market" for

---

[2] Notice of Data Breach, April 4, 2019 attached hereto as Exhibit A.

[3] 17 C.F.R § 248.201 (2013).

[4] _Id._

[5]     _Guide for Assisting Identity Theft Victims_, FTC (Sep. 2013), _available at_: https://www.consumer.ftc.gov/articles/pdf-0119-guide-assisting-id-theft-victims.pdf (the "FTC Guide")(last visited April 21, 2019).

a number of years.[6] Indeed, as a result of large-scale data breaches, Social Security numbers, healthcare information, and other PII have been made publicly available to identity thieves and cyber criminals.

17.    Professionals tasked with trying to stop fraud and other misuse acknowledge that PII has real monetary value in part because criminals continue their efforts to obtain this data.[7] According to the Identity Theft Resource Center, 2017 saw 1,579 data breaches, representing a 44.7 percent increase over the record high figures reported a year earlier.[8] The Healthcare sector had the second largest number of breaches among all measured sectors and the highest rate of exposure per breach.[9]

18.    Healthcare related data is among the most sensitive, and personally consequential when compromised. A report focusing on health-care breaches found that the "average total cost to resolve an identity theft-related incident…came to about $20,000," and that the victims were forced to pay out-of-pocket costs for

---

[6]    FTC Guide, *supra* n.9.

[7] *Data Breaches Rise as Cybercriminals Continue to Outwit IT*, *CIO Magazine*, https://www.cio.com/article/2686167/data-breach/data-breaches-rise-as-cybercriminals-continue-to-outwit-it.html (last visited January 23, 2019).

[8] *2017 Annual Data Breach Year-End Review,* https://www.idtheftcenter.org/2017-data-breaches, (last visited January 23, 2019).

[9] Identity Theft Resource Center, 2018 End -of-Year Data Breach Report. Available at https://www.idtheftcenter.org/2018-data-breaches/ (last visited April 19, 2019).

9

health care they did not receive in order to restore coverage.[10]  Almost 50 percent of the victims lost their health care coverage as a result of the incident, while nearly one-third said their insurance premiums went up after the event. Forty percent of the customers were never able to resolve their identity theft at all. Data breaches and identity theft have a crippling effect on individuals and detrimentally impact the entire economy as a whole.[11]

19.    Clearway knew the importance of safeguarding Patient PII entrusted to it and of the foreseeable consequences if its data security systems were breached, including the significant costs that would be imposed on its Patients as a result of a breach.

C. **_Defendant Acquires, Collects, and Stores Plaintiff and Class Members' PII_**

20.    Defendant acquires, collects, stores, and maintains a massive amount of protected health related information and other personally identifiable data about its Patients.

---

[10] Elinor Mills, *Study: Medical identity theft is costly for victims*, CNET (March 3, 2010) https://www.cnet.com/news/study-medical-identity-theft-is-costly-for-victims/ (last visited April 21, 2019)

[11]    *Id.*

21.    As a condition of engaging in health services, Clearway requires that its customers entrust it with highly sensitive personal information.

22.    By obtaining, collecting, using, and deriving a benefit from Plaintiff and Class Members' PII, Clearway assumed legal and equitable duties to those individuals and knew or should have known that it was responsible for protecting Plaintiff and Class Members' PII from disclosure.

23.    Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their PII. Plaintiff and Class Members, as current and former patients, relied on Defendant to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

24.    Clearway acknowledges its obligation to maintain the privacy of patient PII entrusted to it. For example, Clearway issues a Notice of Privacy Practices to all its Patients wherein it represents, *inter alia*, that, "[o]ur facility is required by law to: **maintain the privacy of protected health information**; provide you with this notice of its legal duties and privacy practices with respect to your health information; abide by the terms of this notice; and  notify you if your protected health information is breached."[12] (emphasis added)

_____

[12] Clearway Notice of Privacy Practices, attached hereto as Exhibit B.

### D. *Defendant's Conduct Violates HIPAA and Industry Standard Practices*

25.    Title II of HIPAA contains what are known as the Administrative Simplification provisions. 42 U.S.C. §§ 1301, *et seq*. These provisions require, among other things, that the Department of Health and Human Services ("HHS") create rules to streamline the standards for handling PII like the data Defendant left unguarded. The HHS has subsequently promulgated five rules under authority of the Administrative Simplification provisions of HIPAA.

26.    Defendant's Data Breach resulted from a combination of insufficiencies that indicate Defendant failed to comply with safeguards mandated by HIPAA regulations and industry standards. Clearway's security failures include, but are not limited to:

      a.  Failing to maintain an adequate data security system to prevent data loss;

      b.  Failing to mitigate the risks of a data breach and loss of data;

      c.  Failing to adequately catalog the location of Patients', including Plaintiff and Class Members', digital information;

d.  Failing to properly encrypt Plaintiff and Class Members' PII;

e.  Failing to ensure the confidentiality and integrity of electronic protected health information Defendant creates, receives, maintains, and transmits in violation of 45 CFR 164.306(a)(1);

f.  Failing to implement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights in violation of 45 CFR 164.312(a)(1);

g.  Failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 CFR 164.308(a)(1);

h.  Failing to identify and respond to suspected or known security incidents; mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 CFR 164.308(a)(6)(ii);

i.  Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic protected health information in violation of 45 CFR 164.306(a)(2);

j.  Failing to protect against any reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 CFR 164.306(a)(3);

k.  Failing to ensure compliance with HIPAA security standard rules by their workforce in violation of 45 CFR 164.306(a)(94);

l.  Impermissibly and improperly using and disclosing protected health information that is and remains accessible to unauthorized persons in violation of 45 CFR 164.502, *et seq.*;

m. Failing to effectively train all members of its workforce (including independent contractors) on the policies and procedures with respect to protected health information as necessary and appropriate for the members of its workforce to carry out their functions and to maintain security of protected health information in violation of 45 CFR 164.530(b) and 45 CFR 164.308(a)(5); and

n.  Failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard protected health information, in compliance with 45 CFR 164.530(c).

E. *__Plaintiff and Class Members Suffered Damages__*

27.    The ramifications of Defendant's failure to keep Patient PII secure are long lasting and severe. Once PII is stolen, fraudulent use of that information and damage to victims may continue for years.

28.    The PII belonging to Plaintiff and Class Members is private, sensitive in nature, and was left inadequately protected by Defendant who did not obtain Plaintiff or Class Members' consent to disclose such PII to any other person as required by applicable law and industry standards.

29.    The Data Breach was a direct and proximate result of Clearway's failure to: (a) properly safeguard and protect Plaintiff and Class Members' PII from unauthorized access, use, and disclosure, as required by various state and federal regulations, industry practices, and common law; (b) establish and implement appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of Plaintiff and Class Members' PII; and (c) protect against reasonably foreseeable threats to the security or integrity of such information.

30.    Defendant had the resources necessary to prevent the Data Breach, but neglected to adequately invest in data security measures, despite its obligations to protect Patient data.

31.    Had Defendant remedied the deficiencies in its data security systems and adopted security measures recommended by experts in the field, it would have prevented the intrusions into its systems and, ultimately, the theft of PII.

32.    As a direct and proximate result of Defendant's wrongful actions and inaction, Plaintiff and Class Members have been placed at an imminent, immediate, and continuing increased risk of harm from identity theft and fraud, requiring them to spend time, which they otherwise would have dedicated to other life demands, such as work and family, in an effort to mitigate the actual and potential impact of the Data Breach on their lives. The U.S. Department of Justice's Bureau of Justice Statistics found that "among victims who had personal information used for fraudulent purposes, 29% spent a month or more resolving problems" and that "resolving the problems caused by identity theft [could] take more than a year for some victims."[13]

33.    To date, Clearway has only offered patients a 1-year membership in IdentityWorks protection services.[14] This is wholly inadequate. As discussed above, victims of data breaches and other unauthorized disclosures commonly face multiple

[13] U.S. Department of Justice, Office of Justice Programs Bureau of Justice Statistics, *Victims of Identity Theft, 2012*, December 2013 available at https://www.bjs.gov/content/pub/pdf/vit12.pdf (last visited April 19,2019).

[14] See, Exhibit A. ("As an additional precaution, to reduce the risk of fraud or identity theft, we are offering a one-year membership in Experian's IdentityWorks at no cost to you.")

years of ongoing identity theft. Moreover, Defendant's offer does not address any compensation for the unauthorized release and disclosure of Plaintiff and Class Members' PII, including their health-related information.

34.    Furthermore, Defendant's credit monitoring offer to Plaintiff and Class Members squarely places the burden on Plaintiff and Class Members, rather than on Defendant, to investigate and protect themselves from Defendant's tortious acts resulting in the Data Breach. Rather than automatically enrolling Plaintiff and Class Members in credit monitoring services upon discovery of the Data Breach, Defendant merely sent instructions "offering" the services to affected Patients recommending they sign up for the services.

35.    As a result of Defendant's failures to prevent the Data Breach, Plaintiff and Class Members have suffered, will suffer, or are at increased risk of suffering:

    a.  The compromise, publication, theft and/or unauthorized use of their PII;

    b.  Out-of-pocket costs associated with the prevention, detection, recovery and remediation from identity theft or fraud;

    c.  Lost opportunity costs and lost wages associated with efforts expended and the loss of productivity from addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent

17

researching how to prevent, detect, contest and recover from identity theft and fraud;

d.  The continued risk to their PII, which remains in the possession of Defendant and is subject to further breaches so long as Defendant fails to undertake appropriate measures to protect the PII in their possession; and

e.  Current and future costs in terms of time, effort and money that will be expended to prevent, detect, contest, remediate and repair the impact of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

36.    In addition to a remedy for the economic harm, Plaintiff and the Class maintain an undeniable interest in ensuring that their PII is secure, remains secure, and is not subject to further misappropriation and theft.

## **CLASS ACTION ALLEGATIONS**

37.    Plaintiff seeks relief on behalf of himself and as a representative of all others who are similarly situated. Pursuant to Fed. R. Civ. P. Rule 23(a), (b)(2), (b)(3) and (c)(4), Plaintiff seeks certification of a Nationwide Class defined as follows:

All persons whose PII was exposed to unauthorized third parties as a result of the Data Breach announced on or about April 4, 2015 ("Nationwide Class").[15]

38.     Excluded from the Class are Defendant and any of its affiliates, parents or subsidiaries; all persons who make a timely election to be excluded from the Class; government entities; and the judges to whom this case is assigned, their immediate families, and court staff.

39.     Plaintiff hereby reserves the right to amend or modify the class definitions with greater specificity or division after having had an opportunity to conduct discovery.

40.     The proposed Class meets the criteria for certification under Rule 23(a), (b)(2), (b)(3) and (c)(4).

41.     **Numerosity. Fed. R. Civ. P. 23(a)(1).**  Consistent with Rule 23(a)(1), the Members of the Class are so numerous and geographically dispersed that the joinder of all members is impractical. While the exact number of Patients affected in the Data Breach is unknown, upon information and belief, it is in excess of 35,000, and therefore meets the numerosity requirement of 23(a)(1).

---

[15] PII includes protected health information as defined by the Health Insurance Portability and Accountability Act ("HIPAA"), medical information, and other personally identifiable information including, without limitation to, names, health plan identification numbers, dates of birth, gender, address, health plan names, health plan eligibility dates, insurance types and coverage information.

42.    **Commonality. Fed. R. Civ. P. 23(a)(2) and (b)(3).**  Consistent with Rule 23(a)(2) and with 23(b)(3)'s predominance requirement, this action involves common questions of law and fact that predominate over any questions affecting individual Class Members. The common questions include:

a.  Whether Defendant had a duty to protect Patient PII;

b.  Whether Defendant knew or should have known of the susceptibility of its systems to a data breach;

c.  Whether Defendant's security measures to protect its systems were reasonable in light of the FTC data security recommendations, and best practices recommended by data security experts;

d.  Whether Defendant was negligent in failing to implement reasonable and adequate security procedures and practices;

e.  Whether Defendant's failure to implement adequate data security measures allowed the breach of its data systems to occur;

f.  Whether Defendant's conduct, including its failure to act, resulted in or was the proximate cause of the breach of its systems, resulting in the unlawful exposure of Plaintiff and Class Members' PII;

g. Whether Plaintiff and Class Members were injured and suffered damages or other losses because of Defendant's failure to reasonably protect its systems and data network; and,

h. Whether Plaintiff and Class Members are entitled to relief.

43. **Typicality. Fed. R. Civ. P. 23(a)(3).** Consistent with Rule 23(a)(3), Plaintiff's claims are typical of those of other Class Members. Plaintiff is a patient whose PII was exposed in the Data Breach. Plaintiff's damages and injuries are akin to other Class Members, and Plaintiff seeks relief consistent with the relief sought by the Class.

44. **Adequacy. Fed. R. Civ. P. 23(a)(4).** Consistent with Rule 23(a)(4), Plaintiff is an adequate representative of the Class because Plaintiff is a Member of the Class he seeks to represent; is committed to pursuing this matter against Defendant to obtain relief for the Class; and has no conflicts of interest with the Class. Moreover, Plaintiff's Counsel are competent and experienced in litigating class actions, including privacy litigation of this kind. Plaintiff intends to vigorously prosecute this case and will fairly and adequately protect the Class's interests.

45. **Superiority. Fed. R. Civ. P. 23(b)(3).** Consistent with Rule 23(b)(3), a class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The quintessential purpose of

the class action mechanism is to permit litigation against wrongdoers even when damages to an individual plaintiff may not be sufficient to justify individual litigation. Here, the damages suffered by Plaintiff and the Class are relatively small compared to the burden and expense required to individually litigate their claims against Defendant, and thus, individual litigation to redress Defendant's wrongful conduct would be impracticable. Individual litigation by each Class Member would also strain the court system. Individual litigation creates the potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

46. **Injunctive and Declaratory Relief.** Class certification is also appropriate under Rule 23(b)(2) and (c). Defendant, through its uniform conduct, acted or refused to act on grounds generally applicable to the Class as a whole, making injunctive and declaratory relief appropriate to the Class as a whole.

47. Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a.  Whether Defendant failed to timely notify the public of the Data Breach;

b.  Whether Defendant owed a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their PII;

c.  Whether Defendant's security measures to protect its data systems were reasonable in light of FTC data security recommendations, and other best practices recommended by data security experts;

d.  Whether Defendant's failure to institute adequate protective security measures amounted to negligence;

e.  Whether Defendant failed to take commercially reasonable steps to safeguard Patient PII; and

f.  Whether adherence to FTC data security recommendations, and measures recommended by data security experts would have reasonably prevented the data breach.

48.    Finally, all Members of the proposed Classes are readily ascertainable. Defendant has access to patient names and addresses affected by the Data Breach. Using this information, Class Members can be identified and ascertained for the purpose of providing notice.

## FIRST CAUSE OF ACTION
## NEGLIGENCE

49.     Plaintiff restates and realleges paragraphs 1 through 48 above as if fully set forth herein.

50.     As a condition of receiving services, Plaintiff and Class Members were obligated to provide Clearway, through their respective insurance carriers, with their PII.

51.     Plaintiff and the Class Members entrusted their PII to Clearway with the understanding that Clearway would safeguard their information.

52.     Defendant had full knowledge of the sensitivity of the PII and the types of harm that Plaintiff and Class Members could and would suffer if the PII were wrongfully disclosed.

53.     Defendant had a duty to exercise reasonable care in safeguarding, securing and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, designing, maintaining and testing Defendant's security protocols to ensure that Plaintiff and Class Members' information in its possession was adequately secured and protected and that employees tasked with maintaining such information

were adequately training on cyber security measures regarding the security of patient information.

54.    Plaintiff and Class Members were the foreseeable and probable victims of any inadequate security practices and procedures. Defendant knew of or should have known of the inherent risks in collecting and storing the PII of Plaintiff and the Class, the critical importance of providing adequate security of that PII, the current cyber scams being perpetrated and that it had inadequate employee training and education and IT security protocols in place to secure the PII of Plaintiff and the Class.

55.    Defendant's own conduct created a foreseeable risk of harm to Plaintiff and Class Members. Defendant's misconduct included, but was not limited to, its failure to take the steps and opportunities to prevent the Data Breach as set forth herein. Defendant's misconduct also included its decision not to comply with industry standards for the safekeeping and encrypted authorized disclosure of the PII of Plaintiff and Class Members.

56.    Plaintiff and Class Members had no ability to protect their PII that was in Clearway's possession.

57.    Defendant was in a position to protect against the harm suffered by Plaintiff and Class Members as a result of the Data Breach.

58.     Defendant had a duty to have proper procedures in place to prevent the unauthorized dissemination of Plaintiff and Class Members' PII.

59.     Defendant has admitted that Plaintiff and Class Members' PII was wrongfully disclosed to unauthorized third persons as a result of the Data Breach.

60.     Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiff and Class Members' PII while it was within Clearway's possession or control.

61.     Defendant improperly and inadequately safeguarded Plaintiff and Class Members' PII in deviation of standard industry rules, regulations and practices at the time of the Data Breach.

62.      Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and Class Members by failing to have appropriate procedures in place to detect and prevent dissemination of Patient PII.

63.     Defendant, through its actions and/or omissions, unlawfully breached its duty to adequately disclose to Plaintiff and Class Members the existence, and scope of the Data Breach.

64.     But for Defendant's wrongful and negligent breach of duties owed to Plaintiff and Class Members, Plaintiff and Class Members' PII would not have been compromised.

65.    There is a temporal and close causal connection between Defendant's failure to implement security measures to protect the PII of current and former patients and the harm suffered or risk of imminent harm suffered by Plaintiff and the Class.

66.    As a result of  Defendant's negligence, Plaintiff and Class Members have suffered and will continue to suffer damages and injury including, but not limited to: out-of-pocket expenses associated with procuring robust identity protection and restoration services; increased risk of future identity theft and fraud, the costs associated therewith; time spent monitoring, addressing and correcting the current and future consequences of the Data Breach; and the necessity to engage legal counsel and incur attorneys' fees, costs and expenses.

## SECOND CAUSE OF ACTION
### INVASION OF PRIVACY

67.    Plaintiff restates and realleges paragraphs 1 through 48 above as if fully set forth herein.

68.    Plaintiff and Class Members had a legitimate expectation of privacy for their PII and were entitled to the protection of this information against disclosure to unauthorized third parties.

69.    Defendant owed a duty to Patients in their network, including Plaintiff and Class Members, to keep their PII contained as a part thereof, confidential.

27

70.    Defendant failed to protect Patient PII by allowing unauthorized parties to access the ERM system and thereby gain unfettered access to Plaintiff and Class Members' PII.

71.    The unauthorized release of PII, especially the type related to personal health information, is highly offensive to a reasonable person.

72.    The intrusion was into a place or thing, which was private and is entitled to be private. Plaintiff and Class Members disclosed their PII to Defendant as part of their use of Defendant's services, but privately with an intention that the PII would be kept confidential and would be protected from unauthorized disclosure. Plaintiff and Class Members were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

73.    The Data Breach at the hands of Defendant constitutes an intentional interference with Plaintiff and Class Members' interest in solitude or seclusion, either as to their persons or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

74.    Defendant acted with a knowing state of mind when it permitted the Data Breach because it had actual knowledge that its information security practices were inadequate and insufficient.

75.     Because Defendant acted with this knowing state of mind, it had notice and knew the inadequate and insufficient information security practices would cause injury and harm to Plaintiff and Class Members.

76.     As a proximate result of Defendant's acts and omissions, Plaintiff and Class Members' PII was disclosed to and used by third parties without authorization, causing Plaintiff and Class Members to suffer damages.

77.     Unless and until enjoined, and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class Members in that the PII maintained by Defendant can be viewed, distributed, and used by unauthorized persons. Plaintiff and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and the Class.

## THIRD CAUSE OF ACTION
## BREACH OF IMPLIED CONTRACT

78.     Plaintiff restates and realleges paragraphs 1 through 48 above as if fully set forth herein.

79.     Plaintiff and Class Members were required to provide their PII, including names, addresses, dates of birth, social security numbers and various health related information to Defendant as a condition of their use of Defendant's services.

80.     Plaintiff and Class Members paid money to Defendant in exchange for services, as well as Defendant's promises to protect their protected health information and other PII from unauthorized disclosure.

81.     In its written privacy policies, Clearway expressly promised Plaintiff and Class Members that they would only disclose protected health information and other PII under certain circumstances, none of which relate to the Data Breach.

82.     Clearway promised to comply with HIPAA standards and to make sure that Plaintiff and Class Members' protected health information and other PII would remain protected.

83.     Implicit in the agreement between Defendant's patients, including Plaintiff and Class Members, to provide protected health information and other PII, and Defendant's acceptance of such protected health information and other PII, was Defendant's obligation to use the PII of its Patients for business purposes only, take reasonable steps to secure and safeguard that protected health information and other PII, and not make unauthorized disclosures of the protected health information and other PII to unauthorized third parties.

84.     Further, implicit in the agreement, Defendant was obligated to provide Plaintiff and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their protected health information and other PII.

85.    Without such implied contracts, Plaintiff and Class Members would not have provided their protected health information and other PII to Defendant.

86.    Defendant had an implied duty to reasonably safeguard and protect the PII of Plaintiff and Class Members from unauthorized disclosure or uses.

87.    Additionally, Defendant implicitly promised to retain this PII only under conditions that kept such information secure and confidential.

88.    Plaintiff and Class Members fully performed their obligations under the implied contract with Defendant, however, Defendant did not.

89.    Defendant breached the implied contracts with Plaintiff and Class Members by failing to reasonably safeguard and protect Plaintiff and Class Members' PII, which was compromised as a result of the Data Breach.

90.    Defendant further breached the implied contracts with Plaintiff and Class Members by failing to comply with its promise to abide by HIPAA.

91.    Defendant further breached the implied contracts with Plaintiff and Class Members by failing to ensure the confidentiality and integrity of electronic protected health information Defendant created, received, maintained, and transmitted in violation of 45 CFR 164.306(a)(1).

92.    Defendant further breached the implied contracts with Plaintiff and Class Members by failing to implement technical policies and procedures for electronic information systems that maintain electronic protected health information

to allow access only to those persons or software programs that have been granted access rights in violation of 45 CFR 164.312(a)(1).

93.    Defendant further breached the implied contracts with Plaintiff and Class Members by failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 CFR 164.308(a)(1).

94.    Defendant further breached the implied contracts with Plaintiff and Class Members by failing to identify and respond to suspected or known security incidents; mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 CFR 164.308(a)(6)(ii).

95.    Finally, Defendant also breached the implied contracts with Plaintiff and Class Members by failing to protect against any reasonably anticipated threats or hazards to the security or integrity of electronic protected health information in violation of 45 CFR 164.306(a)(2).

## FOURTH CAUSE OF ACTION
## UNJUST ENRICHMENT

96.    Plaintiff restates and realleges paragraphs 1 through 48 above as if fully set forth herein.

97.    Plaintiff and Class Members conferred a monetary benefit on Defendant. Specifically, they purchased goods and services from Defendant and in so doing provided Defendant with their PII. In exchange, Plaintiff and Class

Members should have received from Defendant the goods and services that were the subject of the transaction and have their PII protected with adequate data security.

98.    Defendant knew that Plaintiff and Class Members conferred a benefit on Defendant and accepted and have accepted or retained that benefit. Defendant profited from these transactions and used the PII of Plaintiff and Class Members for business purposes.

99.    The amounts Plaintiff and Class Members paid for goods and services were used, in part, to pay for use of Defendant's network and the administrative costs of data management and security.

100.    Under the principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiff and Class Members, because Defendant failed to implement appropriate data management and security measures that are mandated by industry standards.

101.    Defendant failed to secure Plaintiff and Class Members' PII and, therefore, did not provide full compensation for the benefit Plaintiff and Class Members provided.

102.    Defendant acquired the PII through inequitable means in that it failed to disclose the inadequate security practices previously alleged.

103.    If Plaintiff and Class Members knew that Defendant would not secure their PII using adequate security measures, they would not have engaged in transactions with Defendant.

104.    Plaintiff and Class Members have no adequate remedy at law.

105.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity to decide how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant's fail to undertake appropriate and adequate measures to protect the PII of patients in its continued possession; (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members; and (viii) the diminished value of Defendant's services they received.

106.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

107.    Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that Defendant unjustly received from them. In the alternative, Defendant should be compelled to refund the amounts that Plaintiff and Class Members overpaid for Defendant's services.

<u>**FIFTH CAUSE OF ACTION**</u>
**BREACH OF FIDUCIARY DUTY**

108.    Plaintiff restates and realleges paragraphs 1 through 48 above as if fully set forth herein.

109.    In light of the special relationship between Defendant and its Patients, whereby Defendant became guardian of Plaintiff and Class Members' highly sensitive, confidential, personal, financial information, and other PII, Defendant became a fiduciary created by its undertaking and guardianship of the PII, to act primarily for the benefit of its Patients, including Plaintiff and Class Members, for: 1) the safeguarding of Plaintiff and Class Members' PII; 2) timely notification to Plaintiff and Class Members of a data breach or disclosure; and 3) maintenance of

complete and accurate records of where Defendant's Patients' information was and is stored.

110.    Defendant has a fiduciary duty to act for the benefit of Plaintiff and Class Members upon matters within the scope of its patients' relationship, in particular, to keep secure the PII of its Patients.

111.    Defendant breached its fiduciary duties to Plaintiff and Class Members by failing to diligently investigate the Data Breach to determine the number of Class Members affected in a reasonable and practicable period of time.

112.    Defendant breached its fiduciary duties to Plaintiff and Class Members by failing to encrypt and otherwise protect the integrity of the ERM system containing Plaintiff and Class Members' protected health information and other PII.

113.    Defendant breached its fiduciary duties to Plaintiff and Class Members by failing to timely notify and/or warn Plaintiff and Class Members of the Data Breach.

114.    Defendant breached its fiduciary duties to Plaintiff and Class Members by failing to ensure the confidentiality and integrity of electronic protected health information that Defendant created, received, maintained, and transmitted, in violation of 45 CFR 164.306(a)(1).

115.    Defendant breached its fiduciary duties to Plaintiff and Class Members by failing to implement technical policies and procedures for electronic information

systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights in violation of 45 CFR 164.312(a)(1).

116.    Defendant breached its fiduciary duties to Plaintiff and Class Members by failing to implement policies and procedures to prevent, detect, contain, and correct security violations, in violation of 45 CFR 164.308(a)(1).

117.    Defendant breached its fiduciary duties to Plaintiff and Class Members by failing to identify and respond to suspected or known security incidents; mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 CFR 164.308(a)(6)(ii).

118.    Defendant breached its fiduciary duties to Plaintiff and Class Members by failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic protected health information in violation of 45 CFR 164.306(a)(2).

119.    Defendant breached its fiduciary duties to Plaintiff and Class Members by failing to protect against any reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 CFR 164.306(a)(3).

120.    Defendant breached its fiduciary duties to Plaintiff and Class Members by failing to ensure compliance with the HIPAA security standard rules by its workforce in violation of 45 CFR 164.306(a)(94).

121.    Defendant breached its fiduciary duties to Plaintiff and Class Members by impermissibly and improperly using and disclosing protected health information that is and remains accessible to unauthorized persons in violation of 45 CFR 164.502, *et seq*.

122.    Defendant breached its fiduciary duties to Plaintiff and Class Members by failing to effectively train all members of its workforce (including independent contractors) on the policies and procedures with respect to protected health information as necessary and appropriate for the members of its workforce to carry out their functions and to maintain security of protected health information in violation of 45 CFR 164.530(b) and 45 CFR 164.308(a)(5).

123.    Defendant breached its fiduciary duties to Plaintiff and Class Members by failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard protected health information, in compliance with 45 CFR 164.530(c).

124.    Defendant breached its fiduciary duties to Plaintiff and Class Members by otherwise failing to safeguard Plaintiff and Class Members' PII.

125.   As a direct and proximate result of Defendant's breaches of its fiduciary duties, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity to decide how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect Patient PII in their continued possession; (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members; and (viii) the diminished value of Defendant's services they received.

126.   As a direct and proximate result of Defendant's breaches of its fiduciary duties, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, and other economic and non-economic losses.

## SIXTH CAUSE OF ACTION
## BREACH OF CONFIDENCE

127.   Plaintiff restates and realleges paragraphs 1 through 48 above as if fully set forth herein.

128.   At all times during Plaintiff and Class Members' interactions with Defendant, Defendant was fully aware of the confidential and sensitive nature of Plaintiff and Class Members' protected health information and other PII that Plaintiff and Class Members provided to Defendant.

129.   As alleged herein and above, Defendant's relationship with Plaintiff and Class Members was governed by terms and expectations that Plaintiff and Class Members' protected health information and other PII would be collected, stored, and protected in confidence, and would not be disclosed the unauthorized third parties.

130.   Plaintiff and Class Members provided their respective protected health information and PII to Defendant with the explicit and implicit understandings that Defendant would protect and not permit the protected health information and other PII to be disseminated to any unauthorized parties.

131.   Plaintiff and Class Members also provided their respective protected health information and PII to Defendant with the explicit and implicit understandings that Defendant would take precautions to protect that protected

health information and other PII from unauthorized disclosure, such as following

basic principles of encryption and information security practices.

132.  Defendant voluntarily received in confidence Plaintiff and Class

Members' protected health information and other PII with the understanding that

protected health information and other PII would not be disclosed or disseminated

to the public or any unauthorized third parties.

133.  Due to Defendant's failure to prevent and avoid the Data Breach from

occurring by, *inter alia*, following best information security practices to secure

Plaintiff and Class Members' protected health information and other PII, Plaintiff

and Class Members' protected health information and PII was disclosed and

misappropriated to unauthorized third parties beyond Plaintiff and Class Members'

confidence, and without their express permission.

134.  As a direct and proximate cause of Defendant's actions and/or

omissions, Plaintiff and Class Members have suffered damages.

135.  But for Defendant's disclosure of Plaintiff and Class Members'

protected health information and other PII in violation of the parties' understanding

of confidence, their protected health information and other PII would not have been

compromised, stolen, viewed, accessed, and used by unauthorized third parties.

Defendant's Data Breach was the direct and legal cause of the theft of Plaintiff and

Class Members' protected health information and other PII, as well as the resulting damages.

136.  The injury and harm Plaintiff and Class Members suffered was the reasonably foreseeable result of Defendant's unauthorized disclosure of Plaintiff and Class Members' protected health information and other PII. Defendant knew its computer systems and technologies for accepting and securing Plaintiff and Class Members' protected health information and other PII had numerous security vulnerabilities because Defendant failed to observe even basic security practices necessary to prevent fraudulent provider accounts from being created.

137.  As a direct and proximate result of Defendant's breaches of confidence, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity to decide how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover identity theft; (vi) the continued risk to their PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as

Defendant fails to undertake appropriate and adequate measures to protect Patient PII in their continued possession; (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members; and (viii) the diminished value of Defendant's goods and services they received.

138.   As a direct and proximate result of Defendant's breaches of confidence, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, and other economic and non-economic losses.

**WHEREFORE**, Plaintiff, on behalf of himself and all others similarly situated, respectfully requests the following relief:

    a.  An Order certifying this case as a class action;

    b.  An Order appointing Plaintiff as the class representative;

    c.  An Order appointing the undersigned counsel as class counsel;

    d.  A mandatory injunction directing Defendant to hereinafter adequately safeguard the PII of the Class by implementing improved security procedures and measures;

    e.  An award of damages;

    f.  An award of costs and expenses;

    g.  An award of attorneys' fees; and

h. Such other and further relief as this court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial as to all issues so triable by a jury.

Dated:        June 7, 2019        **MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**

*/s/ Joseph T. Waechter*
Joseph T. Waechter (FL Bar No. 0092593)
Jonathan B. Cohen (FL Bar No. 0027620)
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
T: 813-223-5505
F: 813-223-5402
Email: jwaechter@ForThePeople.com
Email: jcohen@ForThePeople.com

**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
Jean S. Martin (*Pro Hac Vice* Forthcoming)
2018 Eastwood Road, Suite 225
Wilmington, NC 28403
T: 813-559-4908
F: 813-222-4795
Email: jeanmartin@ForThePeople.com

**PITTMAN, DUTTON & HELLUMS, P.C.**
Jonathan S. Mann (*Pro Hac Vice* Forthcoming)
Austin B. Whitten (*Pro Hac Vice* Forthcoming)
2001 Park Place North, Suite 1100
Birmingham, AL 35203
T: (205) 322-8880
F: (205) 328-2711
Email: jonm@pittmandutton.com
Email: austinw@pittmandutton.com

*Attorneys for Plaintiff*

44